# UNITED STATES DISTRICT COURT

# DISTRICT OF MINNESOTA

| | |
|---|---|
| BERNARD NEUBAUER, DEBORAH NEUBAUER, JOSEPH J. NEUBAUER, and ROBERT NEUBAUER, | Civil No. 14-3014 (JRT/LIB) |
| Plaintiffs, | **MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT** |
| v. | |
| CHAD WIENER, COUNTY OF PINE, and JACQUELINE RYDBERG. | |
| Defendants. | |

Jordan S. Kushner, **LAW OFFICE OF JORDAN S. KUSHNER**, 431 South Seventh Street, Suite 2446, Minneapolis, MN 55415, for plaintiffs.

Jason M. Hiveley and Nathan Midolo, **IVERSON REUVERS CONDON**, 9321 Ensign Avenue South, Bloomington, MN 55438, for defendants Chad Wiener and the County of Pine.

Tammy J. Schemmel, **BARNA GUZY & STEFFEN, LTD**, 200 Coon Rapids Boulevard, Suite 400, Minneapolis, MN 55433, for defendant Jacqueline Rydberg.

This case involves a dispute over an allegedly misguided attempt by a deputy sheriff and a private citizen to help the late Joseph A. Neubauer ("Mr. Neubauer") collect his artifact collection from his old home. Plaintiffs are Mr. Neubauer's sons and the wife of one of his sons. Together Plaintiffs allege that Defendants committed constitutional and state law violations when Chad Wiener assisted Mr. Neubauer and Jacqueline Rydberg in entering Mr. Neubauer's old home, and when Rydberg assisted Mr. Neubauer in removing artifacts from that home.

Now before the Court are two summary judgment motions:  one filed by Defendants Wiener and County of Pine ("Pine County"), and another filed by Defendant Rydberg.  Plaintiffs have not moved for summary judgment.  Because Plaintiffs have failed to put forward any evidence to suggest Mr. Neubauer's property interest in his old home had been extinguished by the date in question, or to suggest Plaintiffs had a property interest in the artifacts that Mr. Neubauer removed from his old home, the Court will grant Defendants' summary judgment motions.

## BACKGROUND

### I.      THE PARTIES

Plaintiffs are all residents of Pine County, Minnesota.  Plaintiffs Bernard, Joseph J., and Robert Neubauer are brothers and sons of the late Mr. Neubauer.  Plaintiff Deborah Neubauer is Robert's wife.

Defendant Pine County is a municipal corporation in the State of Minnesota. Defendant Wiener is a Pine County deputy sheriff.  Defendant Rydberg is a private citizen who resides in Pine County.  Rydberg was an acquaintance and later a friend of Mr. Neubauer.

### II.     FACTUAL BACKGROUND

In 1947, Mr. Neubauer purchased property on Pokegama Lake Road in Pine County.  (Aff. of Nathan C. Midolo ("Midolo Aff."), Ex. 1 ("1947 Deed") at 3, Sept. 1, 2015, Docket No. 35.)  The warranty deed he received conveyed Mr. Neubauer title over the property "excepting and reserving from this conveyance all exceptions and

reservations contained in prior conveyances of record in the office of the Register of Deeds in and for said Pine County." (*Id.*) An attorney wrote a letter to Mr. Neubauer in 1947 explaining that this "excepting and reserving" language had appeared in prior deeds pertaining to the property, although the attorney "[did] not find any specific exception or reservation in any prior conveyance as shown by the abstract." (*Id.* at 2.)

Mr. Neubauer and his late-wife, Virginia, lived on the Pokegama Lake property and had three sons: Joseph J., Bernard, and Robert. The property has two houses on it, and each house has a separate address: 13815 and 13801 Pokegama Lake Road. Mr. and Mrs. Neubauer lived in the 13801 house, the "easterly" dwelling on the property. (Midolo Aff., Ex. 7 ("Robert Neubauer Dep.") at 23:7-20.)

In 1986, Mr. and Mrs. Neubauer executed a contract for deed, agreeing to convey title to their entire property to Robert and Deborah after the receipt of payment of $35,000 to be paid in monthly installments over 30 years, ending in 2016. (Aff. of Tammy J. Schemmel ("Schemmel Aff."), Ex. H. ("1986 Contract for Deed") at 34, Sept. 1, 2015, Docket No. 30.) The contract for deed purported to reserve a property interest for life in the 13801 home to Mr. and Mrs. Neubauer:

> Reserving, however, to Sellers and to the survivor of them, a life estate in the Easterly of the two dwelling houses now located on the premises and such life estate in all of the outbuildings including the right to conduct horticultural operations on the above described tract as selected by the Sellers and also the right to cut firewood on the above described premises.

(*Id.* at 32.) The contract for deed also contained the identical "excepting and reserving" language contained in the 1947 deed and quoted above. (*Id.*)

In 1993, Robert and Deborah received financing from a bank and paid off the remainder owed under their contract for deed.  (Robert Neubauer Dep. at 18:11-22:10.) Mr. and Mrs. Neubauer then, in accordance with the terms of the contract for deed, provided Robert and Deborah with a warranty deed to the property.  (Schemmel Aff., Ex. I ("1993 Warranty Deed")).  The warranty deed contained the identical "life estate" provision that was written in the contract for deed (*id.* at 39-40), and the identical "excepting and reserving" language contained in the contract for deed and the 1947 deed before it (*id.* at 39), each of which are quoted above.

In 2003, Mr. Neubauer signed a "Quit Claim Deed" that purported to convey a property interest in the family property to Robert and Deborah.  (Schemmel Aff., Ex. J at 41 ("2003 Quit Claim Deed").)   That conveyance does not in its text record Mr. Neubauer's purposes in signing the document, and the Court is aware of only one piece of evidence from the record before the Court purporting to explain Mr. Neubauer's motivation in signing the 2003 conveyance:  Plaintiff Robert's deposition testimony. Robert stated that by 2003, Mrs. Neubauer's health had declined and Mr. Neuabuer worried that he or his wife would incur a medical-services debt that they would be unable to pay.  (Robert Neubauer Dep. at 30:7-32:19.)  Mr. Neubauer worried, according to Robert, that defaulting on this hypothetical future debt might permit the government (or presumably a private medical services provider) to place a lien on the family property because Mr. and Mrs. Neubauer retained a property interest in the estate.  (*Id.*)  It was because of those anxieties, according to Robert, that Mr. Neubauer signed the quit claim deed.  (*Id.*)

The quit claim deed was signed only by Mr. Neubauer; Mrs. Neubauer did not sign it, even though she was alive at the time.  (2003 Quit Claim Deed; *see also* Robert Neubauer dep. at 32:9-11 (stating Mrs. Neubauer died in 2004).)  On the quit claim deed, Mr. Neubauer is listed as "single," but the word "single" is crossed out and the word "married" is written above it.  (2003 Quit Claim Deed.)  The quit claim deed also contained the same "excepting and reserving language" as that included in the 1947 deed, 1986 contract for deed, and 1993 warranty deed.  (*Id.*)  The quit claim deed was prepared by attorney Daniel Blake.  (*Id.*; Decl. of Daniel W. Blake at 2-4, Oct. 10, 2015, Docket No. 42.)

Mrs. Neubauer died in March 2004.  Eight years later, in 2012, Mr. Neubauer collapsed in his home, was transported to a hospital, diagnosed with terminal cancer, and voluntarily entered into a nursing home.  (Midolo Aff., Ex. 5 ("Bernard Neubauer Dep.") at 69:20-70:5, 78:16-22; *see also id.*, Ex. 12 ("Wiener Dep.") at 23:11-12 ("[H]e had Stage Four cancer and he was going to die in the next, you know, few months . . . .").)  Bernard petitioned the Pine County District Court to grant himself emergency guardianship over Mr. Neubauer, but at a hearing before the state court Bernard agreed to voluntarily dismiss the petition.  (*Id.*, Exs. 8, 9, 10.)  The state court entered an order dismissing the petition and stating that Mr. Neubauer would reside at the nursing home and "shall remain residing in the nursing home until further order of the Court."  (*Id.*, Ex. 9 at 2.)

In July 2012, Mr. Neubauer called the Pine County Sheriff's Office and asked generically to speak to a deputy.  (Wiener Dep. at 20:21-24.)  Wiener answered the phone

and Mr. Neubauer stated that his children were denying him access to his own property. (*Id.* at 21:19-23.)  Wiener visited Mr. Neubauer where Wiener observed that Mr. Neubauer did not appear mentally deficient, nursing home staff stated that Mr. Neubauer was not mentally deficient, and Mr. Neubauer stated that he wanted to see his artifacts and alleged that his children were taking his Social Security checks.  (*Id.* at 23:15-25:23.)  Wiener ran Mr. Neubauer's name through his squad car computer and noted the address listed in Mr. Neubauer's record was 13801 Pokegama Lake Road.  (*See id.* at 26:17-27 (stating the address associated with Mr. Neubauer's driver's license "matched the address that he was talking about").)  Wiener told Mr. Neubauer that he would not drive Mr. Neubauer anywhere – because Wiener was unsure whether Mr. Neubauer was legally in control of his own movements – but that "[i]f he was ever able legally to leave, got a ride out to his house and he was physically unable to get into the house himself," then Wiener would "come out or a deputy would come out and see if we could help him if there was no one else able to do so."  (*Id.* at 25:2-8.)  Prior to Mr. Neubauer's call, Wiener had never met or heard of Mr. Neubauer or the Neubauer family.  (*Id.* at 21:10-16.)

At some point before August 22, 2012, Mr. Neubauer asked Rydberg to drive him to his property for the purpose of gathering his artifacts.  (Schemmel Aff., Ex. AA ("Rydberg Dep.") at 34:11-17.)  Then on August 22, Rydberg drove Mr. Neubauer from the nursing home to the Neubauer family property.  Once Rydberg and Mr. Neubauer arrived at the property, they observed that additional locks had been placed on the door to the 13801 house.  (*Id* at 40:12-41:24.)  They then called Wiener, who came to the

property and opened one of the doors to the house with a crow bar, causing a small amount of damage.  (*Id.*; Wiener Dep. at 34:17-24, 40:13-41:03, 47:09-49:01.)   At the moment he opened the door, Wiener was not aware that Mr. Neubauer intended to remove artifacts from the home; Wiener left the property when Mr. Neubauer announced that he intended to do so.  (Wiener Dep. at 51:5-52:22; Rydberg Dep. at 45:20-46:13.)

After the August 22 incident, Mr. Neubauer and Rydberg delivered the artifacts they collected to Judy Scholin, president of the Pine City Library Foundation ("PCLF"). (Rydberg Dep. at 50:2-52:3:.)  Mr. Neubauer purported to gift almost all of the items to the PCLF, with the exception of a clock, also removed from the house, that he purported to give Rydberg.

Mr. Neubauer died on September 25, 2012.

## III.    PROCEDURAL BACKGROUND

### A.    State Court Action

In October 2012, just after Mr. Neubauer's death, the Neubauer brothers and Mr. Neubauer's estate together brought a state court action against the PCLF, Scholin, "Mary Roe," and "John Doe."  (Midolo Aff., Ex. 11. at 2.)  Deborah was not a plaintiff in that case.  (*See id.*)  Defendants Roe and Doe were "unknown persons who acted under the direction of/or with the support of PCLF and Judy Scholin to assist Joe Neubauer in wrongfully removing Plaintiff's property from Plaintiff's possession."  (*Id.* ¶ 5.) Plaintiffs alleged a conversion claim as well as other claims not at issue in the current

action in this Court.  (*Id.* ¶¶ 23-32.)  Plaintiffs requested damages and the return of the artifacts, as well as costs.  (*Id.* at 7.)

Testimony and exhibits in the state court action suggested Wiener and Rydberg were John Doe and Mary Roe, but they were never formally substituted as parties.  On May 14, 2014, the parties to the state court action entered into a settlement and release, whereby the PCLF returned all but a few of the artifacts in question to Mr. Neubauer's estate, having the effect of transferring the artifacts to the Neubauer brothers.  (Midolo Aff., Ex. 16.)  The state court entered an order approving the settlement and dismissing the case with prejudice and entering judgment.  (*Id.*)

## B.      The Current Case

Plaintiffs filed a complaint with this Court on July 26, 2014, alleging nine counts of claims against Defendants.  (Compl., July 26, 2014, Docket No. 1.)  The first three counts allege violations of 42 U.S.C. § 1983:  Count I alleges Defendants violated the Fourth Amendment's ban on unreasonable searches and seizures by entering the home on the Pokegama Lake property and taking the artifacts in question; Count II alleges Defendants violated the Fifth and Fourteenth Amendments' Due Process Clauses by taking and depriving Plaintiffs of their personal property without due process of law; and Count III alleges Defendants conspired to violate Plaintiffs' Fourth, Fifth, and Fourteenth Amendment rights.  (*Id.* ¶¶ 27-29.)

The remaining six counts allege violations of Minnesota law:  trespass (Count IV), trespass to chattel (Count V), conversion (Count VI), civil theft (Count VII), civil conspiracy (Count VIII), and negligence (IX).  (*Id.* ¶¶ 30-35.)

Plaintiffs initially requested $200,000 in compensatory damages, additional punitive damages, an order requesting that Rydberg return the clock she has in her possession, and costs and attorney's fees.  (*Id.* at 10.)

On September 1, 2015, Wiener and Pine County filed a motion for summary judgment, and Rydberg filed her own separate motion for summary judgment.

## ANALYSIS

### I.   STANDARD OF REVIEW

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party can demonstrate that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A fact is material if it might affect the outcome of the lawsuit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences to be drawn from those facts.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Summary judgment is appropriate if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of

proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "To defeat a motion for summary judgment, a party may not rest upon allegations, but must produce probative evidence sufficient to demonstrate a genuine issue [of material fact] for trial." *Davenport v. Univ. of Ark. Bd. of Trs.*, 553 F.3d 1110, 1113 (8th Cir. 2009) (citing *Anderson*, 477 U.S. at 247-49).

## II.   OWNERSHIP OF THE ARTIFACTS

Defendants argue that Plaintiffs' personal property-related claims must fail because the artifacts belonged only to Mr. Neubauer until the moment of his death, or at least that Plaintiffs have failed to meet their burden of producing evidence to suggest otherwise, and therefore Plaintiffs cannot prove a necessary element of their personal property-related claims:  an ownership interest.

A person may acquire, or acquire an interest in, another's personal property by an agreement between the parties.  *See Haubrick v. Johnston*, 23 Minn. 237, 237-38 (1876) (discussing how plaintiff acquired personal property via an agreement, and how defendant then claimed to acquire an interest in the personal property via another agreement); *Olson v. Bird*, No. A05-2477, 2006 WL 2601684, *2-3 (Minn. Ct. App. Sept. 12, 2006) (holding that because a woman could not demonstrate the existence of an agreement with her deceased male partner, the court could not find that she had a property interest in his personal property).

Here, the parties do not dispute that Mr. Neubauer found many of the artifacts in his collection, and that many of the artifacts were found on the Pokegama Lake property,

which of course belonged to Mr. and Mrs. Neubauer for much of their lives.   The evidence before the Court also indicates there was no oral or written agreement governing ownership of these artifacts.   (*See* Bernard Neubauer Dep. at 45:23-46:3 (confirming the lack of an agreement).)   Based on this evidence alone, there is nothing to indicate that any of the artifacts at issue in this case belonged in whole or in part to any of Plaintiffs on August 22, 2012.

Yet Plaintiffs make two arguments that at least a few of the plaintiffs possessed at least a partial ownership interest in the artifacts.   First, Plaintiffs argue in conclusory fashion that the artifact collection belonged to the family, not to Mr. Neubauer alone, because the entire family often went artifact hunting together.   But this argument fails because, as mentioned above, Plaintiffs have failed to produce any evidence suggesting the existence of an agreement establishing joint ownership over all of the artifacts, instead of ownership in Mr. Neubauer alone (or perhaps ownership in Mr. and Mrs Neubauer together, while they were married).   Second, Plaintiffs argue that not all of the artifacts were found by Mr. Neubauer, and not all of the artifacts were found on Mr. Neubauer's Pokegama Lake property; some were found by the children, and some were found away from the property.   But Plaintiffs do not support their argument with evidence regarding any specific artifacts, let alone the specific artifacts removed by Mr. Neubauer from the Pokegama Lake property on August 22, 2012.   Plaintiffs offer arguments based on generalities, but the Court cannot operate on such an abstract level; plaintiffs must show that they had a property interest in the particular items removed

from the property on the date in question. Plaintiffs have not produced evidence sufficient to create a genuine issue on the matter.

The same applies to Plaintiffs' claims relating to the clock. Rydberg and Mr. Neubauer removed a clock from the Pokegama Lake property, Rydberg contends that Mr. Neuabuer gave her the clock after they removed it from the home, and Rydberg now has that clock in her possession. Plaintiffs dispute that Mr. Neubauer gave the clock to Rydberg, but more importantly, for their personal property claims related to the clock to survive Defendants' motions for summary judgment, Plaintiffs must produce at least some evidence that on August 22, 2012, Plaintiffs possessed a property interest in the clock. Plaintiffs have not done so. The closest Plaintiffs come is in highlighting two contradictory statements in deposition testimony, one by Bernard Neubauer stating that the clock "was supposed to go" to Robert after Mr. Neubauer's death (Bernard Neubauer Dep. at 122:14-123:03), and another by Robert stating that Mr. Neubauer stated in the 1990s at some point that the clock "was supposed to go" to Robert's son (Robert Neubauer Dep. at 115:17-116:11). Even if it were true that Mr. Neubauer had intended the clock to go to Robert or Robert's son upon Mr. Neubauer's death – something the Court is not deciding today – Plaintiffs claims are for trespass to chattel, conversion, and theft, and those claims all require Plaintiffs to have an ownership interest in the personal property at issue on the date in question. Like the artifacts generally, Plaintiffs have presented no evidence suggesting any of the Plaintiffs had an ownership interest in the clock on August 22, 2012, and therefore the clock-related claims fail too.

The Court will therefore dismiss Plaintiffs' personal property related claims, as alleged in Counts II, III, V, VI, VII, VIII, and IX.

## III.    MR. NEUBAUER'S LIFE ESTATE

Defendants also argue that Mr. Neubauer retained a life estate interest in the Pokegama Lake property until his death, including on the date of the event in question, and therefore all of Plaintiffs' trespassory-related claims must fail too.

"A 'life estate' is an estate whose duration is limited to the life of the party holding it, or some other person."  31 C.J.S. Estates § 35.  Courts apply traditional rules of contract interpretation when interpreting instruments that purport to create, amend, or destroy a property interest.  *Trobaugh v. Trobaugh*, 397 N.W.2d 401, 404 (Minn. Ct. App. 1986).

Here, the parties agree that Mr. and Mrs. Neubauer created, in the 1986 contract for deed, a valid property interest for life in the Pokegama Lake property.  The parties also agree that if Mr. Neubauer possessed a property interest in the Pokegama Lake property on the date of the incident in 2012, Plaintiffs' trespass-related claims must fail. Plaintiffs, however, contend that Mr. Neubauer's interest in the property was extinguished in 2003 when he signed the quit claim deed.  Defendants argue in response that the text of the 2003 quit claim deed maintained the validity of the life interest, or in the alternative that the 2003 quit claim deed was not valid because Mrs. Neubauer did not sign it even though she was still alive.  The Court finds both of Defendants' arguments persuasive.

First, the quit claim deed conveyed the entirety of the Pokegama Lake property "excepting and reserving from this conveyance all exceptions and reservations contained in prior conveyances."  (2003 Quit Claim Deed.)  Mr. and Mrs. Neubauer's life estate interest was an exception or a reservation recognized in both the 1986 and the 1993 conveyances, and therefore, according to the text of the purported quit claim deed, that life interest was not extinguished by the 2003 conveyance.  Plaintiffs argue that the Court should avoid this interpretation of the 2003 conveyance because the very purpose of the conveyance was supposedly to eliminate the life estate, to convey every interest in the property that Mr. Neubauer possessed – that was, after all, why the document was called a quit claim deed.  But the only evidence of that alleged purpose comes from one of Plaintiffs' own depositions, and even if Plaintiffs are correct and the 2003 conveyance's sole purpose was to extinguish Mr. Neubauer's life estate interest, then that purpose is not expressed in the document itself, and where the unambiguous text of the document conflicts with the purported subjective intent behind the text, it is the text that controls. 11 *Williston on Contracts* § 4:22 (4th ed. 2002) ("[I]n interpreting or construing a contract, the courts are seeking to discern the intent that is expressed or apparent in the writing, and not the real intent of the parties; that is, it is the objective, not the subjective, intent that controls.").[1]

_____

[1] Plaintiffs also argue that statements regarding the purpose of the 2003 conveyance made by the attorney who drafted the document are relevant to the Court's interpretation.  First, however, the statement of an attorney as to what his client's document means is far from conclusive as to the client's subjective intent in signing the document.  And second, for the same reason as stated above in the text of the Court's opinion, the Court interprets the 2003

(Footnote continued on next page.)

Second, even if the "excepting and reserving" exception did not preserve Mr. Neubauer's life estate and the 2003 quit claim deed as properly interpreted would have extinguished Mr. Neubauer's remaining interest in the property, the 2003 conveyance was invalid because it lacked Mrs. Neubauer's signature.  Minn. Stat. § 507.02 provides, "If the owner [of real property] is married, no conveyance of the homestead . . . shall be valid without the signatures of both spouses."  The Minnesota Supreme Court has interpreted that statute to hold, "[W]here a deed to a homestead is not executed by one of the spouses, the transfer is wholly void, not merely voidable, regardless of the equities of the matter."  *Fiduciary Corp. v. Blanco*, 276 N.W.2d 30, 33 (Minn. 1979).[2]  Plaintiffs attempt to avoid this result by highlighting cases where courts have declined to apply § 507.02 in favor of a signing spouse who sought to escape a contract.  But the two cases Plaintiffs cite involve equitable estoppel, where a signing spouse sought to undo a mortgage by invoking § 507.02, arguing that he or she could not be held liable for the mortgage because their spouse did not also sign the loan documents, and the court held that where a lender relies to its detriment on a signing spouse's initial misstatement as to whether that person is married, the signing spouse is equitably estopped from later arguing that he or she was in fact married on the date of signing for the purpose of evading enforcement of the contract.  *See, e.g.*, *Karnitz v. Wells Fargo*

---

(Footnote continued.)

conveyance by looking for the objective intent of the parties as expressed in the document's text, not to an attorney's interpretation of the subjective intent of his client.

   [2] Plaintiffs do not argue against labeling Mr. and Mrs. Neubauer's life estate interest as a "homestead" as that term is used in § 507.02.

*Bank, N.A.*, 572 F.3d 572, 574-75 (8th Cir. 2009) (holding plaintiff is estopped from challenging validity of mortgage because lender relied on plaintiff's representations to its detriment); *HSBC Mortg. Servs., Inc. v. Graikowski*, 812 N.W2d 845, 849 (Minn. Ct. App. 2012) (same).  The Neubauers' case does not, of course, involve equitable estoppel. Mr. Neubauer is not attempting to escape liability for a loan he took out without his wife's consent; Mr. Neubauer is deceased, and there is no mortgage at issue.  Therefore § 507.02 applies, the 2003 quit claim deed was invalid, and Mr. Neubauer retained his property interest in the Pokegama Lake property on the date of the incident in question on August 22, 2012.

Because Plaintiffs have not presented evidence suggesting Mr. Neubauer lacked a property interest on the day in question, Plaintiffs' trespass-related claims in Counts I, III, IV, VIII, and IX all must fail.

## IV.    REMAINING ARGUMENTS

Defendants offered a number of alternative arguments:  Plaintiffs' claims are barred by res judicata, Rydberg cannot be held liable for constitutional violations because she is not a state actor, Bernard and Joseph J.'s trespass-related claims cannot succeed because they never held a property interest in the Pokegama Lake property, and Wiener is protected by qualified and official immunity, among other arguments.  But because none of Plaintiffs' claims can succeed based of the Court's findings regarding the ownership of the artifacts and Mr. Neubauer's life estate, the Court need not address Defendants' alternative arguments.

# ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.      Defendant Rydberg's Motion for Summary Judgment [Docket No. 27] is **GRANTED**.

2.      Defendants Wiener and County of Pine's Motion for Summary Judgment [Docket No. 32] is **GRANTED**.

3.      All of Plaintiffs' claims are **DISMISSED with prejudice**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED:  August 5, 2016                    _____s/ John R. Tunheim_____
at Minneapolis, Minnesota.                          JOHN R. TUNHEIM
                                                         Chief Judge
                                               United States District Court